IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ADAM R.F. GUSTAFSON; and KATHERINE A.N. GUSTAFSON, | ) ) | CIVIL NO. 09-00565 SOM/KSC |
| Plaintiffs, | ) ) ) | ORDER DISMISSING FIRST AMENDED COMPLAINT |
| vs. | ) ) ) | |
| CHIYOME FUKINO, M.D., Director of the Hawaii Department of Health; et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |

ORDER DISMISSING FIRST AMENDED COMPLAINT

I.      INTRODUCTION.

        This case is an example of why people who overreact to situations are accused of "making a federal case out of nothing." Plaintiff Adam Gustafson[1] and his wife, Katherine Gustafson, proceed pro se against various state officials.  The Gustafsons complain about having been asked to state their race and any Spanish origin on a birth certificate registration form submitted in October 2009 for their Hawaii-born daughter.  The Gustafsons articulated to the State their objection to a birth certificate identifying their races.  The court has no quarrel with the Gustafsons' wish for a birth certificate devoid of such information.  What follows, though, shows questionable judgment.

_____

        [1]While not licensed to practice law in this district, Adam Gustafson is a law school graduate currently employed as a law clerk to the Honorable Richard R. Clifton of the United States Court of Appeals for the Ninth Circuit.

Within a few weeks of having articulated their objection, and without having received a response from the State, the Gustafsons filed the present lawsuit.  The State responded by issuing a birth certificate without any designation as to race or Spanish origin.  Not satisfied, the Gustafsons filed a First Amended Complaint and now continue to seek damages.

The Gustafsons assert claims based on several alleged constitutional violations under 42 U.S.C. § 1983, as well as various state-law claims.

Defendants move for dismissal of the First Amended Complaint.  That motion is granted without a hearing pursuant to Local Rule 7.2(d).  The Gustafsons' claims of constitutional injury are patently without merit.  <u>See</u> <u>Bell v. Hood</u>, 327 U.S. 678, 682-83 (1946).

To the extent the First Amended Complaint asserts violations of the Gustafsons' right to be free from unreasonable searches and seizures and to travel freely, the Gustafsons have waived and abandoned those claims.  Those claims are therefore dismissed.

With respect to the remaining claims, the only challenging issue for this court has been the not unfamiliar conundrum of whether dismissal of the federal claims is appropriate for lack of subject matter jurisdiction (and thus governed by Rule 12(b)(1) of the Federal Rules of Civil

Procedure) or for pleading deficiencies (and thus governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure).  The court concludes that the Gustafsons, both on the face of the First Amended Complaint and as a factual matter, suffered no injury.  This court therefore has no actual case or controversy before it and dismisses the claims for lack of subject matter jurisdiction.

With dismissal of the Gustafsons' § 1983 claims, this court declines to exercise supplemental jurisdiction over the remaining state-law claims.  The Gustafsons may file a complaint in state court to seek redress for the alleged violations of state law.  The Gustafsons should, of course, take pains to avoid filing claims without factual and legal foundation.

This court would normally give <u>pro se</u> plaintiffs leave to amend their complaint.  However, given the factual allegations in the First Amended Complaint, the court declines to grant the Gustafsons leave to further amend their First Amended Complaint, as no such amendment could allege a viable claim under § 1983. In other words, any such amendment would be futile.  <u>See</u> <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 339 (9th Cir. 1996).

II.    <u>BACKGROUND.</u>

The Gustafsons' First Amended Complaint asserts that their daughter was born in 2009.  <u>See</u> First Amended Complaint ¶ 15 (Feb. 24, 2010).  For background purposes only, the court

notes that the original Complaint alleged that the birth occurred in October 2009.  <u>See</u> Complaint ¶ 1 (Nov. 30, 2009).

The Gustafsons allege that, on or about October 17, 2010, they submitted a birth registration form for their daughter, deliberately leaving blank the spaces left for stating race and any Spanish origin of each parent.  <u>Id.</u> ¶¶ 16-17.

The Gustafsons allege that, on or about October 29, 2009, they requested two certified copies of their daughter's birth certificate.  <u>Id.</u> ¶ 19.  The receipt from the State of Hawaii, Department of Health, indicates that the request was received on November 5, 2009.  <u>See</u> First Amended Complaint, Ex. B.  Pursuant to section 92F-23 of the Hawaii Revised Statutes, and with exceptions not relevant here, the State was required to make a copy of the birth certificate "within ten working days following the date of receipt of the request by the agency."  However, this ten-day period could be "extended for an additional twenty working days if the agency provide[d] to the individual, within the initial ten working days, a written explanation of unusual circumstances causing the delay."  Haw. Rev. Stat. § 92F-23.  Given the Veterans' Day holiday, the initial ten-day period ended on November 19, 2009.  The additional twenty-working-day period of an extension would have ended on December 18, 2009.

On November 12, 2009, the Gustafsons received a letter dated November 10, 2009, from K. Lavarias, State of Hawaii, Office of Health Status Monitoring.  See First Amended Complaint, Ex. C.  The letter notified the Gustafsons that the birth registration form was incomplete because it omitted the race and Spanish origin of the parents.  The letter stated, "The information on race is very useful and important on health and other factors associated with childbirth and infancy."  Id.  The letter said that the Gustafsons' provision of information on their race and Spanish origin would be appreciated.  Id.  Lavarias told the Gustafsons that, until such time as the requested information could be entered on the birth certificate, "certified copies of the certificate will not be issued."  Id.  Somewhat confusingly, Lavarias concluded, "If we do not receive the requested information by the deadline date, [December 10, 2009,] we will enter 'Information not given.' on the birth certificate."  Id.

On or about November 13, 2009, Adam Gustafson responded to Lavarias's letter with two single-spaced pages of questions, including:

> 1.  How should I decide what race to report for purposes of my daughter's birth certificate?  Is there a scientific test I can perform or a document I can look to for an authoritative determination of my race?  Or is it simply what I say it is?

2.  If my race is what I say it is, must I choose from a pre-established list of races, or may I invent a new word to describe my race?  If the former, what races are on the list?  If the latter, are there any limitations on the length or content of my self-reported race?

3.  The letter I received states, "until such time as [items 34-36] are entered on the certificate, certified copies of the certificate will not be issued until the information is completed."  Do I understand correctly that the Office of Health Status Monitoring will not issue a certified copy of my daughter's birth certificate unless and until her parents report their race and Spanish-origin?  Or will the Office send me the certified copies I ordered after the deadline date (December 10, 2009) even if we provide no further information by that date?

    .  .  .  .

7.  Is it possible to report race and Spanish-origin for statistical purposes yet require that they not be encoded or reported on the birth certificate?

See First Amended Complaint, Ex. D.  Adam Gustafson then requested an extension until June 10, 2010, to respond to Lavarias's request for information.  Id.

On or about November 24, 2009, Adam Gustafson again wrote to Lavarias, asking, "[W]hat public services provided by the State of Hawaii or the United States require a certified copy of a birth certificate?  If my wife and I decide not to provide the requested information, what disadvantages will our daughter face?"  See First Amended Complaint, Ex. E.  Adam Gustafson asked

6

for a quick response to all of his questions because December 10, 2009, was approaching.  Id.

The Gustafsons did not wait for the State to respond to either the letter of November 13, 2009, or the letter of November 24, 2009.  On November 30, 2009, less than a week after sending the second letter, the Gustafsons filed the original Complaint in this matter, seeking the issuance of a birth certificate for their daughter with no designation of race.  See Complaint (Nov. 30, 2009).  They thereby mooted out their request for an extension to June 10, 2010.

On or about December 1, 2009, Jill T. Nagamine, a Deputy Attorney General for the State of Hawaii, wrote to Adam Gustafson, noting that she was aware of this lawsuit.  She sent the Gustafsons the two requested certified copies of the birth certificate, which did not mention the race or Spanish origin of the Gustafsons.  She said that the State hoped that the Gustafsons would consider the matter resolved and would therefore not have to incur the expense of serving Defendants with the Complaint and Summons.  See First Amended Complaint, Ex. F.

The Gustafsons did not consider the matter resolved. On February 24, 2010, they filed a First Amended Complaint that continued to seek remedies related to the issuance of a birth certificate for their daughter without a designation of race. See First Amended Complaint (Feb. 24, 2010).  Asserting

7

violations of 42 U.S.C. § 1983 and various state laws, the First Amended Complaint seeks a declaration that Defendants' conduct was unlawful, an injunction prohibiting Defendants' future conduct with respect to the birth certificate in question, and damages under state law.  See id.

III.      STANDARD.

Issues of ripeness and standing are analyzed under Rule 12(b)(1) of the Federal Rules of Civil Procedure, as they go to the court's subject matter jurisdiction.  See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000) (stating that standing pertains to a federal court's subject matter jurisdiction); St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989) (stating that ripeness pertains to the court's subject matter jurisdiction).

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction."

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or attack the existence of subject matter jurisdiction in fact.  Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).

8

When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, it is a facial challenge requiring all allegations of material fact to be taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  When faced with a facial attack on the court's subject matter jurisdiction, this court may examine documents attached to the complaint.  See Samco Global Arms, Inc. v. Arita, 395 F.3d 1212, 1214 n.4 (11th Cir. 2005) ("We use the same standard as the district court in analyzing a facial attack on jurisdiction, and therefore accept the well-pleaded allegations of the complaint as true and limit our inquiry to the complaint and the documents attached thereto."); Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) ("In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."); Maciel v. Rice, 2007 WL 4525143, *2 (E.D. Cal. Dec. 18, 2007) ("In a facial attack, subject matter jurisdiction is challenged solely on the basis of the allegations contained in the complaint (along with any undisputed facts in the record or of which the court can take judicial notice.)").

When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness

attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact.  <u>Thornhill</u>, 594 F.2d at 733.

In the present case, as there are no disputed issues relevant to jurisdiction, there is no practical distinction between the analyses for a facial challenge and for a factual challenge.  To the extent the court analyzes the Gustafsons' standing to assert their § 1983 claims and the ripeness of those claims, the court treats Defendants' motion as an attack on this court's subject matter jurisdiction.

IV.      THE § 1983 CLAIMS ARE DISMISSED.

On March 16, 2010, Defendants filed a motion to dismiss the First Amended Complaint.  <u>See</u> Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted (March 16, 2010).  Defendants seek dismissal of the § 1983 claims.  Defendants' motion is granted.

The Gustafsons assert various violations under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

"Section 1983 imposes two essential proof requirements upon a claimant: 1) that a person acting under color of state law committed the conduct at issue, and 2) that the conduct deprived the claimant of some right, privilege or immunity protected by the Constitution or laws of the United States."  Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988).  A person deprives another of a constitutional right if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation complained of.  See id. at 633.

The First Amended Complaint asserts various violations of the Gustafsons' federal constitutional rights, alleging an unreasonable search and seizure, infringement of their freedom to travel and freedom of speech, due process deprivations, and equal protection violations.  See First Amended Complaint ¶ 56(a). Each of these wholly insubstantial claims fails.

11

> A.   The Gustafsons Waive Their Claims that Defendants Conducted an Unreasonable Search and/or Seizure or Infringed on Their Ability to Travel.

To satisfy the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and internal quotations omitted); accord Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). The First Amended Complaint is completely devoid of any factual allegation concerning an unreasonable search or seizure or an infringement on the Gustafsons' ability to travel, perhaps explaining why the Gustafsons have waived these claims. See Opposition at 20 n.7 ("Plaintiffs hereby waive their Fourth Amendment claim . . . .") and at 25 n.9 ("Plaintiffs hereby waive their Privileges or Immunities claim."). The search and seizure and right to travel claims are therefore dismissed.

> B.   The Gustafsons Suffered No First Amendment Injury.

The First Amendment, made applicable to the states by the Fourteenth Amendment, prohibits the burdening of freedom of speech. See Long Beach Area Peace Network v. City of Long Beach,

574 F.3d 1011, 1020-21 (9th Cir. 2009) (quoting U.S. Const. amend. I); Prete v. Bradbury, 438 F.3d 949, 961 (9th Cir. 2006). As the Gustafsons' First Amendment claim asserts no cognizable injury, this court dismisses that claim for lack of jurisdiction.

When the Gustafsons originally submitted the birth registration form for their daughter, they left blank the areas for responses to questions about race and Spanish origin.  See First Amended Complaint ¶¶ 17-18.  The Gustafsons then received a letter from Defendant Lavarias.  The letter noted that the Gustafsons had not answered the questions related to their race and Spanish origin and asked that the information be provided. See First Amended Complaint, Exhibit C.  This letter stated that, until the Gustafsons provided their race and Spanish origin information so that it could be entered on the birth certificate, certified copies of the certificate would not be issued.  Id. The letter further stated that, if the information was not received by December 10, 2010, "Information not given" would appear on the birth certificate.  Id.

On or about December 3, 2009, the Gustafsons, having not provided the requested information, received two certified copies of their daughter's birth certificate.  See First Amended Complaint ¶ 36 ("Plaintiffs received two certified copies of S.M.G.'s birth certificate dated December 1, 2009 on or about December 3, 2009.").  This birth certificate neither stated the

13

parents' races or Spanish origins nor stated "Information not provided."  See First Amended Complaint, Exhibit G.  Under these circumstances, the Gustafsons could not be said to have suffered any abridgment of their freedom of speech.

While the Gustafsons filed their original Complaint in this matter before receiving the birth certificates, they could not be said to have suffered any cognizable First Amendment injury even then.  At the time the Gustafsons filed their original Complaint, there was outstanding their request for clarification as to whether they would be denied a birth certificate or would receive a birth certificate stating "Information not provided" in the space for information about race or Spanish origin.  They were also awaiting a response to their request for an extension until June 10, 2010, to provide the requested information.  Inexplicably unable to wait for responses, and thus unaware of whether they could ultimately receive certified copies of the birth certificate and with what listings, the Gustafsons filed suit on November 30, 2009.  Under these circumstances, the Gustafsons simply suffered no abridgement of their right to free speech.

Whether for lack of an injury-in-fact, lack of redressibility for standing purposes, or lack of ripeness, the § 1983 free speech claim is one over which this court lacks subject matter jurisdiction.  That claim is dismissed pursuant to

Rule 12(b)(1).  See San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996) (to have standing to sue, a plaintiff must demonstrate that: 1) it suffered a "concrete and particularized" and "actual or imminent" (as opposed to "conjectural or hypothetical") injury-in-fact; 2) its injury is causally connected to the conduct complained of; and 3) it is likely (not merely speculative) that its injury will be "redressed by a favorable decision"); Municipality of Anchorage v. United States, 980 F.2d 1320, 1323 (9th Cir. 1992) (to demonstrate ripeness, a plaintiff must show both that the issue is appropriate for judicial decision and that the parties will suffer hardship if judicial consideration is withheld).

The Gustafsons depend on their right of informational privacy, which they say protects them from having to disclose certain personal matters, such as sexual activity, medical information and treatment, and financial matters.  See, e.g., Nelson v. NASA, 530 F.3d 865, 877 (9th Cir. 2008), cert. granted 130 S. Ct. 1735 (2010).  The Gustafsons analogize their racial background to medical and financial information.  It is not clear to the court that the analogy is apt.  Although not always discernible on sight, race is at least sometimes obvious without the utterance of a single word.  Even were that not so, the Gustafsons were not actually forced to disclose their race to obtain their child's birth certificate.  And they were not even

15

clearly asked to do so on pain of being denied the birth certificate.  Instead, Lavarias confusingly told the Gustafsons not only that certified copies of the birth certificate would not be issued absent information about race and Spanish origin, but also that "Information not provided" would be entered on the birth certificate.  The latter statement suggested that the Gustafsons might receive a birth certificate stating "Information not provided."  It was precisely this confusion that the Gustafsons wrote to the State about, seeking clarification.  At the time they filed suit, the Gustafsons had not been clearly told that they would be denied a birth certificate if they failed to provide information about race or Spanish origin.

Nor does this court see an injury in connection with the allegations in the First Amended Complaint that the Gustafsons have no assurance that they will be able to receive future copies of their daughter's birth certificate without designations of race or Spanish origin, or copies of birth certificates for their other anticipated (but possibly still unconceived) children.  The Gustafsons themselves do not say additional copies have even been requested, and their case cannot be grounded on speculation.  Indeed, future children might not even be born in Hawaii.

C.   <u>The Gustafsons Suffered No Due Process Injury.</u>

As clarified in their Opposition, the Gustafsons assert a violation of § 1983 based on the alleged deprivation of a protected property interest.  "It is well-settled that the Due Process Clause prevents the state from depriving a plaintiff of a protected property interest without a fair trial in a fair tribunal."  <u>Stivers v. Pierce</u>, 71 F.3d 732, 741 (9th Cir. 1995) (quotations omitted).  To proceed with this claim, the Gustafsons must have had a property interest protected by the Due Process Clause.  "A constitutionally protected property interest results 'from a legitimate claim of entitlement . . . defined by existing rules or understandings that stem from an independent source' such as a statute."  <u>Groten v. California</u>, 251 F.3d 844, 850 (9th Cir. 2001).  This court looks to Hawaii law to define the dimensions of the Gustafsons' allegedly protected property interest.  <u>See</u> <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d 1310, 1316 (9th Cir. 1989).

Under Hawaii law, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. . . . *He must, instead, have a legitimate claim of entitlement to it*."  <u>Alejado v. City & County of Honolulu</u>, 89 Haw. 221, 227, 971 P.2d 310, 316 (1999) (citations omitted) (emphasis in original).  "A person's interest in a benefit constitutes a 'legitimate claim of entitlement' if it is

17

supported by contractual or statutory language that might be invoked at a hearing." Id. (citations omitted).

The Gustafsons contend that, pursuant to section 92F-23 of the Hawaii Revised Statutes, they had a property interest in receiving certified copies of the birth certificate within ten business days of submitting a request for them.[2] This court disagrees. Section 92F-23 states:

> Upon the request of an individual to gain access to the individual's personal record, an agency shall permit the individual to review the record and have a copy made within ten working days following the date of receipt of the request by the agency unless the personal record requested is exempted under section 92F-22. The ten-day period may be extended for an additional twenty working days if the agency provides to the individual, within the initial ten working days, a written explanation of unusual circumstances causing the delay.

The state, via Lavarias's letter dated November 10, 2009, informed the Gustafsons that the birth certificate registration form they had submitted was incomplete, that certified copies of the birth certificate would not be issued until the requested information was provided, and that, if the requested information was not received by December 10, 2009, "Information not given" would be indicated on the birth

_____

[2]In their Opposition, the Gustafsons cite other statutory provisions, but none of these provisions pertains to the supposed ten-day deadline forming the basis of their alleged property interest.

18

certificate.  This letter was dated before the ten-working-day period expired on November 19, 2009.  Notwithstanding this letter, the State sent certified copies of the birth certificate to the Gustafsons on December 1, 2009, well ahead of the extended deadline of December 18, 2009.

The Gustafsons had no property interest in certified copies of the birth certificate before December 18, 2009. Accordingly, there is no factual basis for a due process claim based on the deprivation of a protected property interest.  This court concludes that, given the absence of a due process injury, it lacks subject matter jurisdiction over this claim, which is dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Nor did the Gustafsons suffer a procedural due process injury.  The Gustafsons assert that their procedural due process rights were violated when Defendants refused to grant them a "reasonable extension or respond in any way to Plaintiffs' questions."  See Opposition (May 17, 2007) at 23.  The Gustafsons contend that they "were entitled to a hearing before suffering a permanent deprivation of their daughter's un-altered certified birth record."  Id.  The Gustafsons did not wait a reasonable time for the State to respond to their questions, and they timely received exactly what they wanted--two certified copies of their daughter's birth certificate devoid of any mention of the race or

Spanish origin of either parent.  They allege a right to an "un-altered" certified birth record, but it is unclear what they are claiming to be entitled to other than what was provided before they filed their First Amended Complaint.  As they suffered no deprivation amounting to a procedural due process violation, that claim is also dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

> D.   The Gustafsons Suffered No Equal Protection Injury.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall deny to any person within its jurisdiction the equal protection of the laws.  In other words, a state must treat all similarly situated persons alike.  <u>High Tech Gays v. Defense Indus. Sec. Clearance Office</u>, 895 F.2d 563, 570-71, <u>reh'g denied</u>, 909 F.2d 375 (9th Cir. 1990).

The facts alleged in the First Amended Complaint and the exhibits attached thereto establish that the Gustafsons received the certified copies of the birth certificates that they requested.  The birth certificate for the Gustafson's daughter does not include her parents' race or any indication relating to Spanish origin.  In this respect, the birth certificate differs from the typical Hawaii birth certificate that does designate race, but that difference was requested by the Gustafsons.  The Gustafsons do not identify anyone in a situation like theirs who was treated better than they were.  They thus do not state a

cognizable § 1983 claim based on an alleged violation of equal protection rights.

This is more than a pleading defect.  The Gustafsons simply did not sustain an equal protection injury, based either on the facts alleged in the First Amended Complaint or any other facts in the record.  The equal protection claim is dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

V.      The Court Declines To Exercise Supplemental
        Jurisdiction Over the Remaining State-Law Claims.

Having dismissed the federal question claims asserted under § 1983, the court's jurisdiction, should it choose to exercise it over the remaining state-law claims, would be supplemental, as the Gustafsons have not asserted diversity jurisdiction under § 1332 or any other basis for jurisdiction. See First Amended Complaint ¶¶ 3-6.

Supplemental jurisdiction, unlike federal question or diversity jurisdiction, is not mandatory.  A court may decline to exercise supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the state law claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional

21

circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367.

Supplemental jurisdiction is thus a doctrine of discretion, not of a plaintiff's right.  City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 172 (1997); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).  When, as here, "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  Gibbs, 383 U.S. at 726.  Such a dismissal is not "a mandatory rule to be applied inflexibly in all cases," but "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

This court has dismissed all of the claims over which it had original jurisdiction and identifies no factors making this case anything but the usual case in which supplemental jurisdiction is better declined.  The Gustafsons' state-law claims are therefore dismissed without prejudice to any state court filing that may be appropriate under state law.

VI.        CONCLUSION.

          The court dismisses the Gustafsons' § 1983 claims and declines to exercise supplemental jurisdiction over the remaining state-law claims.  Leave is not granted to file a Second Amended Complaint, as any such amendment would be futile.  See Cahill, 80 F.3d at 339.

          This ruling obviates the need for this court to address a number of other issues raised in Defendants' motion and makes moot the pending discovery motions filed by the Gustafsons.  All outstanding motions are therefore denied.

          The Clerk of Court is directed to enter judgment in favor of Defendants pursuant to this order and to close this case.


          IT IS SO ORDERED.

          DATED: Honolulu, Hawaii, June 18, 2010.




                              /s/ Susan Oki Mollway
                              Susan Oki Mollway
                              United States District Judge


Gustafson, et al. v. Fukino, et al., Civ. No. 09-00565 SOM/KSC; ORDER DISMISSING FIRST AMENDED COMPLAINT